i312claS kjc

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
3  UNITED STATES OF AMERICA,                New York, N.Y.
4           v.                              16 Cr. 212(LAK)
5  MARK CLARKE,
6                Defendant.
7  ------------------------------x          Sentence
8                                           March 1, 2018
                                            11:40 a.m.
9
10 Before:
11                HON. LEWIS A. KAPLAN,
12                                      District Judge
13
14
                         APPEARANCES
15
   GEOFFREY S. BERMAN
16      Interim United States Attorney for
        the Southern District of New York
17 BY:  RACHEL MAIMIN
        Assistant United States Attorney
18
19 DEVERAUX L. CANNICK
        Attorney for Defendant
20
21
22
23
24
25

<a/>

1                       (Case called)
2                       THE DEPUTY CLERK:  Government, are you ready?
3                       MS. MAIMIN:  Good morning, your Honor.  Rachel Maimin
4         for the government.
5                       THE COURT:  Good morning Ms. Maimin.
6                       THE DEPUTY CLERK:  Defendant, are you ready.
7                       MR. CANNICK:  Deveraux Cannick for Mark Clarke.
8                       THE DEFENDANT:  Good morning, your Honor.
9                       THE COURT:  Good morning.
10                 Mr. Cannick, have you and your client had the
11        presentence report for the necessary period?
12                      MR. CANNICK:  Yes, your Honor.
13                      THE COURT:  Mr. Clarke, have you read the presentence
14        report?
15                      THE DEFENDANT:  Yes, sir.
16                      THE COURT:  Try not to swallow the microphone.
17                      THE DEFENDANT:  All right.  Sorry.  Sorry.  I'm
18        excited.  I'm excited.
19                      THE COURT:  Before we get to the rest of the
20        sentencing, I have got a couple of issues with the allocution
21        on the guilty plea.
22                 You were asked, Mr. Clarke whether you understood,
23        before you entered your plea, that you could be ordered to make
24        restitution in an amount ordered by the court, and somehow the
25        question never got answered.

1         Did you understand that?

2         THE DEFENDANT: Could you explain to me a little bit
3 more, sir?

4         MR. CANNICK: Your Honor, may I have a second?

5         (Defense counsel and defendant confer)

6         THE DEFENDANT: Yes, sir.

7         THE COURT: The other point I wanted to raise with was
8 this:

9         Judge Lehrburger, when you entered your plea, asked
10 you whether you understood that the sentencing guideline range
11 is just one of many factors that the sentencing judge would
12 consider in deciding your sentence. I would have preferred if
13 he had asked you whether you understood that the judge who
14 sentences you -- in other words, me, today -- would consider
15 all of the factors laid out in the Sentencing Reform Act.

16         THE DEFENDANT: Yes.

17         THE COURT: Do you understand that that is so?

18         THE DEFENDANT: Yes, your Honor.

19         THE COURT: Then I think there is a transcription
20 error at page 9, starting at line 7 of the transcript of the
21 plea proceeding. The transcript, as it currently reads, says,
22 "At trial, you would have the right to testify in your own
23 defense if you wanted, but you would also have the right not to
24 testify." And then it continues, "If you chose to testify,
25 that couldn't be used against you any way." It seems likely to

```
                                                              4
i312claS kjc
```

me, but I wasn't there, that what Judge Lehrburger actually said was, "If you chose not to testify, that could not be used against you in any way."

Are counsel prepared to stipulate that the transcript be corrected to insert the word "not"?

MS. MAIMIN: Yes, your Honor.

MR. CANNICK: Yes, your Honor.

THE COURT: With all of that stuff, I accept the plea of guilty.

Mr. Cannick, are there any unresolved objections to the presentence report?

MR. CANNICK: None, your Honor.

THE COURT: I adopt the presentence report and the guideline range that it contains.

In relation to the sentencing, I have received the presentence report and Mr. Cannick's sentencing memorandum, filed February 26, with attachments. I also have in my file and have reviewed the report of the forensic evaluation of Mr. Clarke that was done by the Bureau of Prisons while he was at Butner.

Is there anything else I should be aware of that's been submitted in relation to the sentencing?

MS. MAIMIN: Not from the government.

MR. CANNICK: Nothing further from me.

THE COURT: Okay. Mr. Cannick, I will hear you.

1              MR. CANNICK:  Thank you, your Honor.

2              Your Honor, I'm going to be brief.  I take this

3   opportunity only to amplify a few items that I raise in my

4   submission.  I just wanted to reiterate that Mr. Clarke is a

5   young man, 23 years old, but in that 23 years, a lot has -- he

6   has seen a lot.  He grew up in a household that had some

7   turmoil due to the decline of his parents' relationship.  He

8   dealt with that day in and day out.

9              After leaving home, he had to go to school and, as I

10  indicated in his -- in my submission, he went to an environment

11  that was extremely toxic, in fact, it was one where he suffered

12  from being bullied, picked on, and set upon on a daily basis.

13  There was one situation that I mentioned to the court where he

14  was sprayed with Febreze by his classmates.

15             THE COURT:  I'm sorry.  I couldn't understand the

16  middle of the sentence.  What happened?

17             MR. CANNICK:  He was sprayed with Febreze, the air

18  freshener, by his classmates.

19             THE COURT:  He was sprayed?

20             MR. CANNICK:  With Febreze.

21             THE COURT:  Febreze.

22             MR. CANNICK:  Yes.

23             He was dealing with the cultural shock of being one of

24  the few minority students in that school, and he was told that

25  he smelled, and other students would bring Febreze and spray it

1   on him to freshen him up.  He sought refuge by smoking
2   marijuana.
3              He sought refuge later on by availing himself to other
4   members of the community who were probably not pillars of the
5   community, not "probably," they weren't pillars of the
6   community, in fact.  I think that he sought this refuge to find
7   confidence, solace, but this refuge really led him down a path
8   to destruction.
9              The good news here, your Honor, is that he is 23 years
10  old; that he realized that his imprisonment here was pretty
11  much somewhat of a blessing because it took him off that road,
12  it took him off of that path towards destruction, and it gave
13  him an opportunity to get the treatment that he needs, the
14  attention that he needs with respect to his mental health
15  issues and really to address the marijuana use.  He sees this
16  as an opportunity to restart, jump start his life.
17             His family, they are here, his mother.  She suffers
18  from --
19             (Defendant and defense counsel confer)
20             THE COURT:  She suffers from medical issues, very
21  serious ones; but, nonetheless, she has been with him every
22  step of the way.  I can't tell you the number of hours she has
23  contacted my office.  She has been at the MDC.  She probably
24  has called your Honor.  She has called everyone in order to try
25  to be supportive of her son.

1          Again, the good news was that her son was eventually

2     ordered forensic evaluation and he was sent to Butner, and

3     whatever mental health issues that he was experiencing, he is

4     now being set on the right path.  He is receptive to continue

5     rehabilitation, he is receptive to continue help with his

6     marijuana addiction, and we urge your Honor to adopt the

7     recommendation of the probation department and sentence him to

8     a prison term of time served with the condition that he is on

9     supervised release.  Part of that supervised release would be

10    mental health and drug treatment programs.

11         He is anxious to get back into society.  Your Honor,

12    the transformation between Mr. Clarke when I first met him and

13    today is astounding.  I think that that also has been reflected

14    in his behavior in the BOP reports.  You saw in the presentence

15    reports I think he had close to between 20 to 50 violations

16    when he first went in, and we believe that that was -- his

17    mental health issues were a major contributing factor to that.

18    After being restored, he has been a model prisoner at the MDC.

19         One of the things that shocked me and surprised me and

20    just amplified or at least corroborated that thought is that

21    when he got out here, he asked if he could turn around to

22    acknowledge his family.  He acknowledged his family.  But more

23    importantly, he acknowledged the people who had been here

24    supporting him, he thanked them for their support throughout

25    this ordeal.  What the significance of that is to me, your

1  Honor, it shows that he is in touch with his life, he is in
2  touch with others, and he wants to do good for himself and
3  towards others.
4       Thank you.
5       THE COURT: Thank you.
6       Mr. Clarke, you have the right to speak before you are
7  sentenced. Is there anything you want to say?
8       THE DEFENDANT: Yes, Judge.
9       First of all, I want to thank you, your Honor, for
10  giving me a closer court date, and I would like to thank the
11  D.A. for coming up with a good sentencing guidelines with my
12  lawyer. So I would like to thank -- and I would like to thank
13  everybody else that is in this courtroom because the courtroom
14  wouldn't have proceeded without all of you all. And I would
15  also like to thank, you know, the Lord for the obstacles he put
16  me through in life, because without going through what I went
17  through in life, I wouldn't be the man I am today, your Honor.
18  And I feel like I did bad in my life, I lost time in my life,
19  but I felt that I gained, you know, knowledge, wisdom, and
20  understanding, that I got a gift in that I -- if I had put
21  myself around people that I did in the past, that would never
22  come up to me, and I thank you all for putting me through this
23  obstacle where I had to do time, because it made me
24  rehabilitate and want to better myself as a person and really
25  see what I want out of my life, your Honor, which I really see

1  I want my freedom, your Honor, because I need my freedom.  I
2  don't want it because want is for, you know, just for the
3  moment.  I need this for longevity, I need this for life, your
4  Honor, because I feel like I have a gift that I could help my
5  community and others and other young people like myself, and I
6  feel that's -- I just want to tell you all thank you, and I
7  grew up over the past years.
8              THE COURT:  All right.  Anything else?
9              THE DEFENDANT:  No.  Thank you for letting me speak,
10 your Honor.
11             THE COURT:  Thank you.
12             Ms. Maimin.
13             MS. MAIMIN:  Unless the court has any questions, we
14 defer to the presentence report.
15             THE COURT:  Mr. Clarke, please rise for the imposition
16 of sentence:
17             I read your file carefully, and I think, from what I
18 have read, you have made a lot of progress since you were at
19 Butner.  But you also committed a serious crime here, and you
20 have got a significant criminal record, so I can't see my way
21 clear to a time served sentence in this case, but I intend to
22 impose, and I do hereby impose, 30 months' imprisonment.
23             It is the judgment of this court that you be committed
24 to the custody of the Attorney General of the United States or
25 his designee for a term of imprisonment of 30 months.

1              (Pause)

2              THE DEFENDANT:  Sorry, your Honor.

3              THE COURT:  That you thereafter serve a term of
4    supervised release of five years, and that you pay the
5    mandatory special assessment of $100.

6              The term of supervised release shall be subject to the
7    mandatory and the standard conditions of supervision 1 through
8    13 in addition to the following special conditions.

9              THE DEFENDANT:  Don't worry, Mom.

10             THE COURT:  I'm sorry?

11             THE DEFENDANT:  Sorry, your Honor.

12             THE COURT:  First, you shall participate in outpatient
13   substance abuse and mental health programs approved by the
14   probation office, which may include testing to determine
15   whether you have reverted to using drugs or alcohol.  I
16   authorized the release of available drug treatment evaluations
17   and reports, the presentence report, and psychological and
18   psychiatric reports and evaluations to the substance abuse and
19   mental health treatment providers as approved by the probation
20   officer.

21             Second, you shall submit your person, vehicle, and
22   premises under your control to a search at a reasonable time
23   and in a reasonable manner on the basis that the probation
24   officer has reasonable belief that contraband or evidence of a
25   violation of the conditions of your release may be found.

             The mandatory drug testing condition is suspended
because the conditions of supervised release contemplate drug
testing.

             I advise you that to whatever extent you haven't
waived it, you have the right to appeal from the judgment
imposed in this sentence.  If you wish to appeal, you must file
a written notice of appeal with the clerk of the district court
no later than 14 days after the date on which judgment is
entered, which could be as soon as today.  In the event you
wish to appeal and you can't afford to pay the fees necessary
to do so, you have the right to apply for permission to appeal
as a poor person.  If such application were granted, you would
be permitted to appeal without payment of fees; and if you
couldn't afford a lawyer, a lawyer would be appointed for you.

             You may be seated.

             For the benefit of the family, let me say this.  This
is not part of the sentence.  This is for your information.
Mr. Clarke will be released on a date that the Bureau of
Prisons decides, not me.  It is, however, my understanding that
he will get credit for the almost two years he has already
served.  That could turn out to be wrong, but I don't think it
will, and if that's true, while I don't expect anybody to
rejoice over it, Mr. Clarke is probably looking at something
like six or eight months more imprisonment tops.

             Ms. Maimin, do you think that's right?

1            MS. MAIMIN:  I do, your Honor, less any good time.
2            THE COURT:  Well, I didn't even discuss good time
3    because there is a disciplinary record.
4            MS. MAIMIN:  True, your Honor.
5            THE COURT:  Mr. Cannick, do you have any disagreement
6    with what I said?
7            MR. CANNICK:  No, your Honor.
8            THE COURT:  Counsel, is there anything else we need to
9    do here?
10           MS. MAIMIN:  We respectfully move to dismiss all open
11   counts.
12           THE COURT:  Granted.
13           Anything else, Mr. Cannick.
14           MR. CANNICK:  Nothing further, your Honor.
15           THE COURT:  What about the location?
16           MR. CANNICK:  Your Honor, I would request that he be
17   maintained in the northeast region so that his family can have
18   access to him, but my understanding as to how the system works,
19   I suspect that, even with the sentence that was given here and
20   given the amount of time that he has been in, there is a very
21   strong likelihood that he is going to be kept at MDC or a
22   halfway house.
23           THE COURT:  Well, I certainly recommend that he serve
24   the remainder of his time as close to New York as possible.
25           Okay.  Thanks, folks.
                          oOo